IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 24-cv-01707-PAB-SBP

ETANA CUSTODY LIMITED,

    Plaintiff and Counter Defendant,

v.

KENVOR COTHEY,

    Defendant and Counter Claimant / Third-Party Plaintiff,

v.

ETANA HOLDINGS, INC.,

    Third-Party Defendant.

---

# ORDER

---

This matter comes before the Court on Plaintiff's and Third-Party Defendant's 12(b)(6) Motion to Dismiss the First Amended Counterclaim and Third-Party Complaint of Kenvor Cothey [Docket No. 20] and Plaintiff's and Third-Party Defendant's 12(f) Motion to Strike Portions of the First Amended Counterclaim and Third-Party Complaint of Kenvor Cothey [Docket No. 19] filed by Etana Custody Limited and Etana Holdings, Inc.  Defendant Kenvor Cothey, who is also a counter claimant/third-party plaintiff, filed responses to the motion to strike, Docket No. 29, and to the motion to dismiss.  Docket

No. 33.¹  Etana Custody Limited and Etana Holdings, Inc. filed replies.  Docket No. 37; Docket No. 38.  The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## I. BACKGROUND²

Kenvor Cothey brings counterclaims against Etana Custody Limited ("Etana") and claims against Etana's holding company, Etana Holdings, Inc. ("Holdings").³ Docket No. 13 at 12, ¶¶ 1-3.  Mr. Cothey is a technology developer with a background in the financial services industry.  *Id.* at 13, ¶ 8.  Mr. Cothey met the CEO of Custody, Brandon Russell, in late 2018 through an introduction by Etana board member Rob Fleschler.  *Id.*, ¶ 9.  Mr. Cothey provided consulting services to Etana throughout 2019 and 2020.  *Id.*, ¶ 10.  In the summer of 2020, Mr. Cothey and Etana discussed the possibility of hiring Mr. Cothey as a full-time employee.  *Id.*, ¶ 12.  Mr. Cothey received an initial offer letter on June 1, 2020, and negotiations over the terms of his employment ensued.  *Id.*, ¶¶ 12-13.  Emails from Mr. Fleschler later that month outlined the high-level details of a revised employment agreement.  *Id.*, ¶ 14.  After some delay, Mr. Cothey received a formal offer letter on January 5, 2021.  *Id.* at 14, ¶ 16.  On January

---

¹ Mr. Cothey filed two responses to the motion to dismiss, which appear to be slightly different from each other.  Docket No. 32; Docket No. 33.  Mr. Cothey has not explained the reason for the dual filings, but the Court will assume that Docket No. 33 is meant to be a correction to Docket No. 32 and will treat the later filing as the operative response for the purposes of ruling on the present motions.

² The facts below are taken from Mr. Cothey's first amended answer, counterclaim, and third-party complaint, Docket No. 13, and are presumed to be true, unless otherwise noted, for purposes of ruling on the motion to dismiss.

³ Mr. Cothey's first two causes of action – breach of contract and breach of the implied covenant of good faith and fair dealing – are alleged against both Etana and Holdings.  Docket No. 13 at 18-21.  Mr. Cothey's third and fourth causes of action – violation of the Colorado Wage Claim Act and wrongful termination – are alleged only against Etana.  *Id.* at 21-23.  While the counts against Etana are "counterclaims" and the counts against Holdings are "claims," the Court will, for the sake of simplicity, refer to all of the claims as "counterclaims."

2

16, 2021, Mr. Cothey signed the offer letter, as well as a restricted stock agreement (the "RSA").  *Id.* at 15, ¶ 19.  Tina Tran countersigned the offer letter as the chief operating officer of Etana.  Docket No. 13-4 at 4.  Mr. Russell countersigned the RSA as the chief executive officer of Etana.  Docket No. 13-5 at 13.  The portion of the offer letter relevant to the present motions states:

> 3. Equity Compensation. In addition to the foregoing Cash Compensation and benefits, Etana Holdings, Inc. will grant you, subject to the approval by the Board of Directors of Etana Holdings, Inc., 259,775 of 3,711,084 shares of Common Stock, $0.0001 par value, in accordance with the terms of the Restricted Stock Agreement between Etana Holdings, Inc. and you. This grant includes the provision that you agree to any transfer of Common Stock to a new legal entity for ownership purposes should the Company [Etana] be required by law or regulatory body to modify its current capital structure. Grant structure to be determined, pending outcome of currently pending regulatory restructuring.

*Id.* at 14, ¶ 17; Docket No. 13-4 at 2.[4]  The RSA refers to the signatories of the agreement as "shareholders" and describes "shareholders" as "the owners of outstanding capital stock of the Corporation (the 'Shares')."  Docket No. 13 at 15, ¶ 20; Docket No. 13-5 at 2.  The RSA also states:

> 3.1 <u>Conditions to Issuing Shares</u>. No Shares may be issued by the Board without the approval of Shareholders holding fifty percent (50%) of the Shares. Before Shares are issued or reissued to any person, directly, upon exercise of an optional or mandatory purchase under this Agreement, or upon a Transfer permitted as provided herein, such person shall be required to do all of the following:
> (a)    Sign and deliver to the Corporation an Addendum to this Agreement, agreeing to be personally bound by this Agreement.

---

[4] "Generally, a court considers only the contents of the complaint when ruling on a 12(b)(6) motion," but "[e]xceptions to this general rule include the following: documents incorporated by reference in the complaint; documents referred to in and central to the complaint, when no party disputes its authenticity; and 'matters of which a court may take judicial notice.'"  *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1275 (10th Cir. 2023) (quoting *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1146 (10th Cir. 2013)).  The Court finds that both the offer letter and the RSA are referred to and central to Mr. Cothey's counterclaims and therefore the Court may consider them in ruling on the motion to dismiss.

3

> (b) Endorse in blank the stock certificate(s), if any, representing his or her Shares or execute a stock power or assignment separate from certificate(s).
> (c) For the purpose of carrying out the terms of this Agreement, deposit the endorsed stock certificate(s), if any, and any separate stock power or assignment with the secretary of the Corporation;
> (d) Have signed and delivered to the Corporation a Consent of Spouse, if required as provided below.
> (e) Each Shareholder shall have the right to vote his or her Shares and shall receive the dividends paid thereon until such Shares are formally Transferred as provided herein. No Shares can be Transferred except in accordance with the terms hereof, and the person designated by the Corporation to hold the Shares shall hold and deliver the Share certificates only in accordance with the provisions hereof.

Docket No. 13-5 at 4. Mr. Russell, who held 97% of the equity in the company, also signed the RSA. Docket No. 13 at 15, ¶ 21.

After becoming an employee, Mr. Cothey worked as Etana's head of technology. *Id.* at 15-16, ¶ 22. Beginning in 2022, Mr. Cothey repeatedly asked various board members, including Joel Kinney and Mr. Russell, why Mr. Cothey had not yet received the shares of stock referred to in the offer letter. *Id.* at 16, ¶¶ 24-29. Mr. Kinney said that the company was working on the paperwork for the equity. *Id.*, ¶ 25. Mr. Russell told Mr. Cothey that the equity was forthcoming. *Id.*, ¶ 26.

In the fourth quarter of 2022, Mr. Cothey began to be excluded from management meetings. *Id.* at 17, ¶ 32. On or about January 31, 2023, Mr. Russell informed Mr. Cothey that the company was terminating Mr. Cothey, effective immediately. *Id.*, ¶ 33. Mr. Cothey "reminded Mr. Russell that he (Mr. Cothey) remained an Etana shareholder notwithstanding the termination of his employment." *Id.*, ¶ 34. Mr. Russell "responded with words to the effect that Mr. Cothey had a 'right to equity.'" *Id.*

4

Etana provided Mr. Cothey with a proposed severance agreement. *Id.*, ¶ 35. Mr. Cothey emailed Mr. Russell and Mr. Kinney on February 7, 2023 and on February 9, 2023 to confirm that his equity grant was in order. *Id.*, ¶ 36. On February 16, 2023, Mr. Russell responded that payments in the severance agreement were intended to be in lieu of Mr. Cothey's right to equity. *Id.*, ¶ 37. On March 27, 2023, Mr. Cothey sent a letter to Tina Tran, Etana's chief operating officer, seeking to exercise his "put" rights to the shares. *Id.* at 18, ¶ 41. He received a response the next day from Nicole Hamilton, a human resources employee, asserting that Mr. Cothey did not own the shares that he had attempted to "put," and that the conditions precedent to Mr. Cothey receiving shares under the RSA had not been met. *Id.*, ¶ 42.

Etana filed a complaint against Mr. Cothey on June 18, 2024, alleging breach of contract or deceit based on fraud, breach of the duty of loyalty, and unjust enrichment. Docket No. 1. Etana alleges that Mr. Cothey was an underperforming employee who failed to complete job-related tasks, violated company policies, and fraudulently used another company's source code in building technological products for Etana. *Id.* at 1-2, ¶¶ 2-3.

Mr. Cothey filed an answer to Etana's complaint, counterclaims against Etana, and a third-party complaint containing two claims against Holdings on July 30, 2024. Docket No. 8. Mr. Cothey filed his first amended answer to Etana's complaint, counterclaims against Etana, and a third-party complaint containing two claims against Holdings on August 10, 2024. Docket No. 13.

Mr. Cothey alleges four causes of action against Etana and Holdings. Docket No. 13 at 18-23. The first counterclaim alleges a breach of the offer letter by Etana and

5

Holdings. *Id.* at 18-20, ¶¶ 44-54.  The second counterclaim alleges a breach of the implied covenant of good faith and fair dealing by Etana and Holdings regarding the respective contracts they signed with Mr. Cothey.  *Id.* at 20-21, ¶¶ 55-61.  The third counterclaim alleges that Etana violated the Colorado Wage Claims Act.  *Id.* at 21-22, ¶¶ 62-69.  The fourth counterclaim alleges that Etana wrongfully terminated Mr. Cothey. *Id.* at 22-23, ¶¶ 70-80.  Etana and Holdings argue that each of these counterclaims fail as a matter of law and should be dismissed.  Docket No. 20 at 2.

## II. LEGAL STANDARD

### A. Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible." *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)).  Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alterations omitted).  A court, however, does not need to accept conclusory allegations.  *See, e.g., Hackford v. Babbit*, 14 F.3d 1457, 1465 (10th Cir. 1994) ("we are not bound by conclusory allegations, unwarranted inferences, or legal conclusions.").

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim. *Khalik*, 671 F.3d at 1191 (quotations omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson*, 534 F.3d at 1286 (alterations omitted).

### B. Fed. R. Civ. P. 12(f)

Federal Rule of Civil Procedure 12(f) permits the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." However, motions under Rule 12(f) are viewed with disfavor, both because striking a portion of a pleading is a drastic remedy and because such motions are often used as a dilatory or harassing tactic. *A1 Garage Door Serv., L.L.C. v. West*, No. 21-cv-01821-PAB-NRN, 2022 WL 952874, at *1 (D. Colo. Mar. 30, 2022) (collecting cases); *see also* 5C Arthur R. Miller et al., *Fed. Prac. & Proc.* § 1380 (3d ed. June 2024). Thus, motions to strike are typically granted only when the allegations have no bearing on the controversy and the movant can show prejudice. *Sierra Club v. Young Life Campaign, Inc.*, 176 F. Supp. 2d 1070, 1086 (D. Colo. 2001).

III.  ANALYSIS

Etana and Holdings cite Fed. R. Civ. P. 12(b)(6) as the basis for the motion to dismiss.  However, the motion appears to be broader than that.  Movants also ask the Court to dismiss Holdings on the ground that Mr. Cothey has not served Holdings, which does not involve the failure to state a claim.[5]  In regard to the part of the motion seeking to dismiss Mr. Cothey's breach of contract counterclaim, while the motion cites the elements of a breach of contract claim under Colorado law and occasionally refers to the adequacy of certain allegations, the primary argument in support of the motion to dismiss is that Mr. Cothey has failed to show that certain conditions in the contract have occurred rather than that the allegations of the counterclaim fail to sufficiently allege a breach of contract.  As a result, the motion's focus is frequently on evidence and not allegations.  For example, part of the motion asks the Court to "bar" Mr. Cothey's references to various e-mails and communications attached to the counterclaims as being prohibited by the parol evidence rule.  Docket No. 20 at 8.  While the admissibility of evidence is relevant to a summary judgment motion, it is not relevant to a Rule 12 motion to dismiss.  Movants also focus on the truthfulness of the allegations rather than their sufficiency.  For example, movants claim that "Cothey again was not forthright with this Court when he alleged . . . .," which is not a concern on a Rule 12(b)(6) motion.  *Id.* at 7.  Despite this lack of precision, the Court will consider the motion pursuant to the standards of Rule 12(b)(6) where that rule seems to apply.

---

[5] The Court will not dismiss Holdings on this basis.  Mr. Cothey served Holdings on September 27, 2024.  Docket No. 34.  While this service occurred after Etana and Holdings filed their motion to dismiss, service still took place within the ninety-day window that Mr. Cothey had to serve Holdings after he filed his claims against them on August 10, 2024.  *See* Fed. R. Civ. P. 4(m).

### A. Breach of Contract Counterclaim[6]

The first counterclaim alleges a breach of contract based on the failure of Etana and Holdings to issue Mr. Cothey the grant of equity detailed in his offer letter. Docket No. 13 at 18-20, ¶¶ 44-54. To state a claim for breach of contract under Colorado law, a party must allege (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) damages. *Warming Trends, LLC v. Stone*, No. 19-cv-03027-PAB-STV, 2023 WL 2716652, at *10 (D. Colo. Mar. 30, 2023); *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (collecting cases).

For the first element –the existence of a contract – Mr. Cothey alleges that he signed an offer letter on January 16, 2021. *See* Docket No. 13 at 15, ¶ 19. For the second element – performance by the plaintiff – Mr. Cothey alleges that he performed his obligations to work for the company. *Id.* at 15-16, ¶ 22. For fourth element – damages – Mr. Cothey alleges that he did not receive the equity he was promised and suffered damages as a result. *Id.* at 19-20, ¶ 54. While Etana and Holdings dispute Mr. Cothey's right to receive equity, *see* Docket No. 20 at 5-6, they do not dispute the sufficiency of the allegations that he did not receive any equity.

The third element – failure to perform the contract – appears to be at issue here. The contested provision of the offer letter states that "Etana Holdings, Inc. will grant

---

[6] As a threshold matter, Etana and Holdings argue that Mr. Cothey's allegations for this counterclaim rely on impermissible parol evidence, including emails and other communications attached to the counterclaim, to interpret the terms of the offer letter. Docket No. 20 at 8-9. As noted above, the issue is not the admissibility of attachments to the counterclaim. The issue is whether the documents are "referred to in and central to the complaint." *Clinton*, 63 F.4th at 1275 (citation omitted). The Court finds that these documents are referred to in and central to Mr. Cothey's counterclaim.

you, subject to the approval by the Board of Directors of Etana Holdings, Inc., 259,775 of 3,711,084 shares of Common Stock . . . . Grant structure to be determined, pending outcome of currently pending regulatory restructuring." Docket No. 13-4 at 2. Etana and Holdings argue that they were not contractually obligated to make equity payments to Mr. Cothey because that provision of the contract contained two conditions precedent – approval by the board of directors and completion of a regulatory restructuring – that did not occur. Docket No. 20 at 5-6.[7] Mr. Cothey argues that he has alleged that the directors of Etana did approve the issuance of his shares. Docket No. 33 at 7.

Mr. Cothey alleges that "[a]ll of the Board members – Mr. Russell, Mr. Fleschler, and Mr. Kinney – indicated their approval of Mr. Cothey's stock grant of seven percent (7%) of the shares of Etana Holdings, Inc., by, *inter alia*, approving the Offer Letter and the Restricted Stock Agreement." Docket No. 13 at 19, ¶ 46. Mr. Cothey alleges that, throughout 2022, Mr. Russell, via email and text messages, affirmed Mr. Cothey's right to the equity listed in the offer letter. *Id.*, ¶ 51. In response to a question about equity, Mr. Kinney told Mr. Cothey on March 9, 2022 that "[w]e are doing the [paperwork] now for everyone's equity." *Id.* at 16, ¶¶ 24-25. When Mr. Russell terminated Mr. Cothey's employment on January 31, 2023, he stated that Mr. Cothey had "a right to equity." *Id.*

---

[7] Etana and Holdings also interpret Mr. Cothey's counterclaim as alleging a breach of the RSA and argue that the RSA contained conditions precedent that were not satisfied either. Docket No. 20 at 6-7. Mr. Cothey's response argues that Holdings did breach the RSA. Docket No. 33 at 8-9. But the Court finds that Mr. Cothey's first counterclaim –for breach of contract – does not allege a breach of the RSA. *See* Docket No. 13 at 18-20. Instead, the first counterclaim states only that Mr. Cothey is entitled to the equity compensation described in the offer letter. *Id.* at 19, ¶ 45. While the counterclaim references the RSA several times, it does so to make the point that Mr. Cothey did indeed have a right to the equity described in the offer letter. *See id.*, ¶¶ 46-50.

at 17, ¶¶ 33-34.  The Court finds that these allegations regarding the actions and the statements of the board members, taken together, plausibly allege that Mr. Cothey's equity compensation had been approved by the board.  Therefore, the Court finds that Mr. Cothey has sufficiently alleged the satisfaction of the condition precedent.  Since Mr. Cothery has alleged the satisfaction of the condition precedent, the Court finds that Mr. Cothey has sufficiently pled a cause of action for breach of contract.  Thus, the Court will deny the motion to dismiss Mr. Cothey's first counterclaim.

### B.  Breach of the Implied Covenant of Good Faith and Fair Dealing Counterclaim

The second counterclaim alleges that Etana and Holdings breached the offer letter's implied covenant of good faith and fair dealing by failing to issue Mr. Cothey a grant of equity.  Docket No. 13 at 20-21, ¶¶ 55-61.  Mr. Cothey also alleges that the attempts by Etana and Holdings to settle his claim violated the same implied covenant. *Id.*, ¶¶ 59-60.

Etana and Holdings argue that this counterclaim fails because Colorado law does not recognize an implied covenant of good faith and fair dealing in at-will employment contracts.  Docket No. 20 at 9-10.  Mr. Cothey responds that the implied covenant of good faith and fair dealing exists in every contract under Colorado law.  Docket No. 33 at 10-11.  He cites *Wells Fargo Realty Advisors Funding v. Uioli, Inc*, 872 P.2d 1359, 1362 (Colo. App. 1994), for the proposition that a party can breach the covenant by acting "dishonestly" or "outside of accepted commercial practices to deprive the other party of the benefit of the contract."  Docket No. 33 at 11. Mr. Cothey also responds that the rule that the implied covenant does not exist in at-will employment contracts is cabined to the context of wrongful termination.  *Id.*

11

Contrary to Mr. Cothey's assertion, the cases addressing the applicability of the implied covenant of good faith and fair dealing in at-will employment contracts are not limited to wrongful termination cases.  See Allred v. Innova Emergency Med. Assocs., P.C., No. 18-cv-03097-DDD-NRN, 2020 WL 3259249, at *5 (D. Colo. June 16, 2020) (holding, in a case where the employee resigned, that, while the covenant applied to all commercial contracts, it did not apply to at-will employment agreements); Egan v. Fastaff, LLC, No. 22-cv-03364-MEH, 2024 WL 719006, at *5 (D. Colo. Jan. 31, 2024) (holding, in a case involving a wage dispute under Colorado law, that the covenant did not apply to an at-will employment contract).  Since the applicability of the covenant turns on the distinction between a commercial contract and an at-will employment contract, Mr. Cothey's citation of Wells Fargo Realty Advisors Funding, a case involving real estate lending agreements, does not impact this analysis.  See 872 P.2d at 1361-62.  The Court finds that Mr. Cothey has failed to state a claim for breach of the implied covenant of good faith and fair dealing and will dismiss with prejudice Mr. Cothey's second counterclaim against both Etana and Holdings.[8]

---

[8] Etana and Holdings make two other arguments regarding this claim.  First, they assert that this counterclaim should be dismissed against Holdings because Holdings was not a party to the offer letter and thus cannot be in breach of the implied covenant in that contract.  Docket No. 20 at 9.  Mr. Cothey responds that Etana and Holdings are wrong and that his counterclaim against Holdings is for their breach of the implied covenant in the RSA.  Docket No. 33 at 10.  Mr. Cothey's argument contradicts his counterclaim, which only discusses an implied covenant in the offer letter.  See Docket No. 13 at 20, ¶ 56.  Second, they argue that the implied covenant counterclaim is "subsumed by Cothey's breach of contract counterclaim since the Offer Letter is an express agreement governing the parties."  Docket No. 20 at 10.  The Court does not reach either of these arguments because it will dismiss the counterclaim for the reasons discussed above.

### C. Colorado Wage Claims Act Counterclaim

The third counterclaim alleges that that Etana violated the Colorado Wage Claims Act ("CWCA"). Docket No. 13 at 21-22, ¶¶ 62-69. Etana argues that Mr. Cothey cannot bring a claim under the CWCA because he did not live or work in Colorado, but rather in Massachusetts, during his employment with Etana. Docket No. 20 at 11-12. Mr. Cothey responds that the law regarding whether he can bring a CWCA claim is unsettled and that the Court need not resolve the question at this stage. Docket No. 33 at 12. Alternatively, Mr. Cothey asks that the Court grant him leave to amend his counterclaim so that he may assert a claim under a comparable Massachusetts law. *Id.*

The law is not unsettled on this issue, as both this Court and others have held that a plaintiff who neither lived nor worked in Colorado cannot bring a claim under the CWCA. *See Ewton v. Matrix Analytics*, Inc., No. 21-cv-03374-PAB-STV, 2022 WL 4536231, at *2 (D. Colo. Sept. 28, 2022) (holding that the CWCA "only applies to employees in Colorado," and that the updated language of Wage Order 38 did not change the geographic scope of the law); *Sanchez v. Q'Max Solutions, Inc.*, No. 17–cv–01382–CMA–KLM, 2018 WL 1071133, at *3 (D. Colo. Feb. 27, 2018); *Zuni Payments v. Kosarek*, 2022 WL 3018981, at ¶ 39 (Colo. Dist. Ct. June 8, 2022). Nor does the presence of a Colorado forum-selection clause create CWCA jurisdiction, as CWCA claims are extra-contractual and not derived from employment contracts. *Ewton*, 2022 WL 4536231, at *3 (citing *Sanchez*, 2018 WL 1071133, at *3).

Mr. Cothey is a citizen of the United Kingdom and a resident of Massachusetts. Docket No. 17 at 1. There is no allegation in the complaint, and no assertion in the briefing, that Mr. Cothey either lived in or worked in Colorado during his employment

13

with Etana. The Court therefore finds that Mr. Cothey cannot bring a CWCA claim and will dismiss without prejudice his third counterclaim.[9] The Court will also deny Mr. Cothey's request, made in his response, that he be allowed to amend his complaint to add a claim under Massachusetts state law.[10]

### D. Wrongful Termination Counterclaim

The fourth counterclaim alleges that Etana wrongfully terminated Mr. Cothey in violation of public policy. Docket No. 13 at 22-23, ¶¶ 70-80. The Court addressed a similar claim in analogous circumstances in *Lawson v. Heartland Payment Systems, LLC*, 548 F.Supp.3d 1085, 1089-91 (D. Colo. 2020), where the Court dismissed plaintiff's claim that she had been fired because her employer wanted to avoid paying the sales commissions that the plaintiff was likely to earn. *Id.*

---

[9] The parties debate whether equity constitutes a wage under the CWCA. Docket No. 20 at 11-12; Docket No. 33 at 12-13. The Court will not decide this issue because it has already dismissed the counterclaim on other grounds.

[10] Pursuant to the Local Rules, "[a] motion shall not be included in a response or reply to the original motion. A motion shall be filed as a separate document." D.C.COLO.LCivR 7.1(d). The Local Rules also require a party seeking to file an amended pleading to attach the proposed amended pleading. D.C.COLO.LCivR 15.1(b). Plaintiff did not do so. The Tenth Circuit recognizes "the importance of Fed. R. Civ. P. 7(b) and ha[s] held that normally a court need not grant leave to amend when a party fails to file a formal motion." *Calderon v. Kan. Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999); *see also Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1236 (10th Cir. 2020) ("[C]ases are not to be litigated piecemeal. The court should not have to address repeated "improvements" to the complaint. When a party faces a motion to dismiss and it believes that it can overcome objections with an amendment to the pleading, it should seek leave to amend at that time."); *Johnson v. Spencer*, 950 F.3d 680, 721 (10th Cir. 2020) ("A district court may deny leave to amend when a plaintiff fails to file a written motion and instead merely suggest[s] she should be allowed to amend if the court conclude[s] her pleadings [a]re infirm." (quotations omitted; alteration in original); *Albers v. Bd. of Cnty. Comm'rs*, 771 F.3d 697, 706 (10th Cir. 2014) (affirming prejudicial dismissal and denial of request to amend made in response to motion to dismiss without formal motion).

14

Colorado law generally "presumes that an employment relationship is terminable at will by either party." *Mullin v. Hyatt Residential Grp.*, Inc., 82 F. Supp. 3d 1248, 1251-52 (D. Colo. 2015) (citation omitted). However, an exception exists for wrongful termination in violation of public policy. A prima facie case for wrongful termination in violation of public policy requires:

> [1] that the employer directed the employee to perform an illegal act as part of the employee's work related duties or prohibited the employee from performing a public duty or exercising an important job-related right or privilege; [2] that the action directed by the employer would violate a specific statute relating to the public health, safety, or welfare, or would undermine a clearly expressed public policy relating to the employee's basic responsibility as a citizen or the employee's right or privilege as a worker; and [3] that the employee was terminated as the result of refusing to perform the act directed by the employee… [4] the employee present evidence showing that the employer was aware, or reasonably should have been aware, that the employee's refusal to comply with the employer's order or directive was based on the employee's reasonable belief that the action ordered by the employer was illegal, contrary to clearly expressed statutory policy relating to the employee's duty as a citizen, or violative of the employee's legal right or privilege as a worker.

*Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 109 (Colo. 1992). Thus, to state a viable claim for wrongful termination in violation of public policy, an employee must take or not take some action, at the direction of her employer, that violates a clearly expressed public policy. *Id.*

The Court finds that Mr. Cothey has failed to state a claim for wrongful termination in violation of public policy. Mr. Cothey alleges that Etana fired him so that they would not have to issue Mr. Cothey equity in the company. Docket No. 13 at 22, ¶¶ 76-77. But the counterclaim contains no allegation that Etana directed him to violate public policy. The Court therefore finds that Mr. Cothey has failed to state a claim for wrongful termination in violation of public policy and will dismiss without prejudice Mr. Cothey's fourth claim.

    E. **Motion to Strike**

Etana and Holdings ask the Court to strike portions of Mr. Cothey's amended answer, counterclaim, and third-party complaint, as well as an exhibit attached to that pleading, on the basis that those portions of the pleadings violate Federal Rule of Evidence 408. Docket No. 19 at 9. Federal Rule of Evidence 408(a) states:

> Evidence of the following is not admissible – on behalf of any party – either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction: (1) furnishing, promising, or offering – or accepting, promising to accept, or offering to accept – a valuable consideration in compromising or attempting to compromise the claim; and (2) conduct or a statement made during compromise negotiations about the claim.

Fed. R. Evid. 408(a). Rule 408 does not apply, however, until discussions "crystallize[] to the point of threatened litigation." *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 561 F.2d 1365, 1373 (10th Cir. 1977). The Court finds, based on the pleadings currently before it, that none of the alleged post-termination interactions between Mr. Cothey and Etana employees appear to have discussed the threat of litigation. Given that the challenged portions of Mr. Cothey's pleadings do not appear to violate Rule 408, the Court will not take the "extreme and disfavored" step of striking a party's pleadings and will deny the motion to strike. *See BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007).

IV. **CONCLUSION**

  It is therefore

  **ORDERED** that Plaintiff's and Third-Party Defendant's 12(b)(6) Motion to Dismiss the First Amended Counterclaim and Third-Party Complaint of Kenvor Cothey [Docket No. 20] is **GRANTED in part and DENIED in part**. It is further

**ORDERED** that Counts III and IV of the First Amended Counterclaim [Docket No. 13] are **DISMISSED without prejudice** against Etana Custody Limited.  It is further

**ORDERED** that Count II of the of the First Amended Counterclaim and Third-Party Complaint [Docket No. 13] is **DISMISSED with prejudice** against Etana Custody Limited and Etana Holdings, Inc.[11]  It is further

**ORDERED** that Plaintiff's and Third-Party Defendant's 12(f) Motion to Strike Portions of the First Amended Counterclaim and Third-Party Complaint of Kenvor Cothey [Docket No. 19] is **DENIED**.

DATED March 28, 2025.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

---

[11] The Court dismisses Count II with prejudice because it finds there is no set of facts that Mr. Cothey could plead that would make his at-will employment contract subject to the implied covenant of good faith and fair dealing.

17