IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 24-cv-01707-PAB-SBP

ETANA CUSTODY LIMITED,

Plaintiff and Counter Defendant,

v.

KENVOR COTHEY,

Defendant and Counter Claimant / Third-Party Plaintiff,

v.

ETANA HOLDINGS, INC.,

Third-Party Defendant.

---

**ORDER**

---

This matter comes before the Court on Plaintiffs' and Third-Party Defendants' Motion for Summary Judgment Seeking Dismissal of Defendant's Remaining Counterclaim [Docket No. 53] and Defendant/Third Party Plaintiff's Motion for Summary Judgment [Docket No. 59]. The Court has jurisdiction pursuant to 28 U.S.C. § 1332.[1]

[1] On August 21, 2026, the assigned magistrate judge issued a recommendation regarding the failure of plaintiff and counter defendant Etana Custody Limited ("Etana") and third-party defendant Etana Holdings, Inc. ("Holdings") (collectively, the "Etana Parties") to retain counsel. *See* Docket No. 61 at 1. The magistrate judge recommends that Etana's complaint be dismissed without prejudice and that default be entered in favor of Kenvor Cothey. *See id.* at 1-2. No party has objected to the recommendation. In the absence of an objection, the district court may review a magistrate judge's recommendation under any standard it deems appropriate. *See Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991); *see also Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party

## I. UNDISPUTED FACTS

Mr. Cothey is a technology developer with a background in financial services and investments. Docket No. 59 at 2, ¶ 1. In 2017, Mr. Cothey founded the business Metabrokr, LLC ("Metabrokr"), where he worked to develop software technologies that could be used for owning, trading, and maintaining custody of cryptocurrency investments. *Id.*, ¶ 2. In late 2018, Mr. Cothey was introduced to Brandon Russell, founder and Chief Executive Officer of Etana, by Rob Fleschler, whom Mr. Cothey understood was an Etana board member and the CEO of one of Etana's investors. *Id.*, ¶ 3. In addition to being CEO of Etana, Mr. Russell is also one of three directors of Etana Holdings Inc., which is the holding company of Etana. *Id.*, ¶ 4.

Mr. Cothey began providing consulting services to Etana through a partnership between Etana and Metabrokr. *Id.* at 3, ¶ 5. Beginning in 2019 and into 2020, Mr. Cothey invoiced Etana periodically for his services and was paid in cash. *Id.*, ¶ 6. In early summer 2020, Mr. Cothey began negotiating with Mr. Russell and Mr. Fleschler for Mr. Cothey to join Etana as a full-time employee. *Id.*, ¶ 7. On June 1, 2020, Etana conveyed a written initial offer of a compensation package that included a base salary, equity, rights to certain net revenues, and other cash payments. *Id.*

---

objects to those findings."). Finding "no clear error on the face of the record," *see* Fed. R. Civ. P. 72(b), Advisory Committee Notes, the Court will accept the recommendation that Etana's complaint be dismissed without prejudice. The Court will also deny the Etana Parties' motion for summary judgment. Furthermore, the Court will rule on Mr. Cothey's motion for summary judgment on his breach of contract counterclaim. While the Etana Parties did not respond to Mr. Cothey's motion for summary judgment, to the extent the Court can discern the Etana Parties' arguments from their motion for summary judgment, the Court will consider such arguments. However, because the Etana Parties do not dispute Mr. Cothey's assertions of fact in his summary judgment motion, the Court will deem such facts admitted.

Mr. Cothey negotiated for his compensation package to include 7% of equity in Etana, in lieu of net revenue rights and other cash obligations. *Id.*, ¶ 8. On June 22, 2020, Mr. Fleschler wrote to Mr. Cothey to confirm Mr. Russell's "revised proposal" which included the "7.0% of equity in Etana" requested by Mr. Cothey. *Id.*, ¶ 9. On June 24, 2020, Mr. Fleschler wrote to Mr. Cothey and Mr. Russell, stating in pertinent part:

> **Status update – Kenvor Cothey compensation terms – agreed**.
>
> Brandon and Kenvor,
>
> Based on my conversations with both of you, an agreement on compensation has been reached with high level details as follows:
>
>> i) Beginning July 1, 2020, Kenvor will have an annual stated base salary of $120,000 + benefits + the opportunity to increase base to $200,000 + benefits once Etana earns $250,000 of gross revenue for 3 consecutive months.
>>
>> ii) Etana to make a $25,000 payment upon agreement signature, which has a target date of June 30, 2020.
>>
>> iii) Etana to make a $25,000 payment on each of the following three dates:
>>
>> iv) September 30, 2020, December 30, 2020 and March 30, 2021 for a total of $75,000.
>>
>> v) Kenvor to be granted 7.0% of equity in Etana.

*Id.* at 3-4, ¶ 10. On November 20, 2020, Mr. Russell texted Mr. Cothey that he was "finalizing the share issue with our legal." *Id.*, ¶ 11. On December 11, 2020, Mr. Russell followed up, informing Mr. Cothey that Mr. Russell was "[s]itting with the board for sign off." *Id.*

On January 5, 2021, Etana delivered a formal offer letter (the "Offer Letter"); a Restricted Stock Agreement (the "RSA"); and a Proprietary Information and Inventions

Release Agreement (the "PIIA"). *Id.*, ¶ 12. The Offer Letter set forth certain terms of Mr. Cothey's employment with Etana. *Id.*, ¶ 13. The Offer Letter includes Paragraph 3, among other provisions, which states:

> Equity Compensation. In addition to the foregoing Cash Compensation and benefits, Etana Holdings, Inc. will grant you, subject to the approval by the Board of Directors of Etana Holdings, Inc., 259,775 of 3,711,084 shares of Common Stock, $0.0001 par value, in accordance with the terms of the Restricted Stock Agreement between Etana Holdings, Inc. and you. This grant includes the provision that you agree to any transfer of Common Stock to a new legal entity for ownership purposes should the Company be required by law or regulatory body to modify its current capital structure. Grant structure to be determined, pending outcome of currently pending regulatory restructuring.

*Id.*, ¶ 15. The RSA set forth certain terms of Mr. Cothey's ownership in the equity of Etana. *Id.* at 5, ¶ 17. Among other provisions, the RSA states:

> This Restricted Stock Agreement (this "Agreement"), effective as of 1/16/2021 (9:09:58 AM PST), is entered into by and among Etana Holdings, Inc., a Delaware corporation, (the "Corporation") and the individual shareholders who sign the Agreement (referred to individually as a "Shareholder" or collectively as the "Shareholders").

*Id.* at 5, ¶ 18. The RSA defines "Shareholder" to include "the original Parties to the Agreement"; describes the "Shareholders" in the Recitals as "the owners of outstanding capital stock of the Corporation (the 'Shares')"; defines "Shares" as "the common stock of the Corporation, issued and outstanding at the applicable time, and owned by the Shareholders"; and recites that its purpose is to set out the agreement of the parties to "rights and obligations regarding ownership of the Shares." *Id.* The RSA also provides:

> 3.1 Conditions to Issuing Shares. No Shares may be issued by the Board without the approval of Shareholders holding fifty percent (50%) of the Shares. Before Shares are issued or reissued to any person, directly, upon exercise of an optional or mandatory purchase under this Agreement, or upon a Transfer permitted as provided herein, such person shall be required to do all of the following:

> a) Sign and deliver to the Corporation an Addendum to this Agreement, agreeing to be personally bound by this Agreement.
>
> b) Endorse in blank the stock certificate(s), if any, representing his or her Shares or execute a stock power or assignment separate from certificate(s).
>
> c) For the purpose of carrying out the terms of this Agreement, deposit the endorsed stock certificate(s), if any, and any separate stock power or assignment with the secretary of the Corporation.
>
> d) Have signed and delivered to the Corporation a Consent of Spouse, if required as provided below.

*Id.* at 5-6.

On January 16, 2021, the Offer Letter was executed by Mr. Cothey and Tina Tran, Chief Operating Office of Etana. *Id.* at 6, ¶ 19. That same day, the RSA was executed by Mr. Cothey and Mr. Russell, in his capacity as CEO of Etana. *Id.*, ¶ 20. Mr. Cothey also signed the PIIA, which was an agreement by and between Mr. Cothey and Etana. *Id.*, ¶ 21. The Offer Letter, RSA, and PIIA were executed simultaneously and relate to the same subject matter of Mr. Cothey's employment. *Id.*, ¶ 22. After formally becoming an employee in January 2021, Mr. Cothey served as Principal Solutions Architect for Etana. *Id.* at 7, ¶ 24.

Etana did not issue Mr. Cothey a formal grant or other documentation confirming his ownership of 259,775 shares of Etana common stock. *Id.*, ¶ 25. Mr. Cothey raised this issue multiple times with members of Etana's board. *Id.*, ¶ 26. For example, on March 9, 2022, Mr. Cothey texted Joel Kinney, an Etana board member, to ask how his equity was being handled in light of capital gains tax considerations. *Id.*, ¶ 27. Mr. Kinney responded: "There are no tax consequences for you for 2021 with respect to equity in Etana. We are doing the paper work now for everyone's equity and we'll be

able to share documentation when it's all ready." *Id.* In 2022, Mr. Cothey raised the subject of his equity grant and tax consequences with Mr. Russell by phone and email. *Id.*, ¶ 28. Mr. Russell assured Mr. Cothey that the equity was forthcoming and that Etana was working on it. *Id.* Mr. Cothey continued to inquire about his equity by email and other means with Mr. Russell and Mr. Kinney in 2022. *Id.*, ¶ 29. While formal paperwork was not provided to Mr. Cothey, at no point did any board member deny that Mr. Cothey was entitled to a 7% equity stake in Etana. *Id.*, ¶ 30.

In January 2023, Mr. Russell met with Mr. Cothey and informed Mr. Cothey that his employment was being terminated with "immediate effect." *Id.*, ¶ 31. Mr. Cothey received no criticism or warnings about his work. *Id.* During this meeting, Mr. Cothey reminded Mr. Russell that Mr. Cothey remained a shareholder notwithstanding the termination of his employment. *Id.* at 8, ¶ 32. Mr. Russell responded with words to the effect that Mr. Cothey had "a right to equity." *Id.* Mr. Cothey proposed a severance agreement in which Etana offered to continue his salary for 10 months from February through November 2023 (a total of $165,000 in salary continuation payments). *Id.*, ¶ 33.

On February 7 and February 9, 2023, Mr. Cothey emailed Mr. Russell and Mr. Kinney to confirm that his equity grant was in order. *Id.*, ¶ 34. On February 16, 2023, Mr. Russell responded that the severance payments were intended to be "in lieu" of Mr. Cothey's rights to equity. *Id.*, ¶ 35. Mr. Russell concluded the conversation by writing, "Etana does not intend for you to retain any equity or rights to equity following your termination. To the extent you have a claim to equity, the seperation [sic] payment is meant to be fair compensation for the release of that claim." *Id.*, ¶ 37 (emphasis

omitted). Following Mr. Cothey's termination, Etana alleged that it had discovered Mr. Cothey fraudulently concealed his use of source code owned by his prior employer, Noble Markets LLC ("Noble"), to build the Etana platform. *Id.*, ¶ 38.

## II. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

A movant who bears the burden at trial must submit evidence to establish the essential elements of its claim or affirmative defense. *Harper v. Mancos Sch. Dist. RE-6*, 837 F. Supp. 2d 1211, 1217 (D. Colo. 2011). By contrast, where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cnty. Of Denver*,

36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115. When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

## III. ANALYSIS

Mr. Cothey moves for summary judgment on his breach of contract counterclaim. *See* Docket No. 59 at 9-15. Mr. Cothey also moves for summary judgment against Etana on Etana's breach contract and fraud in the inducement claims. *See id.* at 15-18. Because the Court will accept the magistrate judge's recommendation that Etana's claims be dismissed, the Court will only address that portion of Mr. Cothey's motion that moves for summary judgment on his breach of contract counterclaim.

To state a claim for breach of contract under Colorado law, a party must allege (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) damages. *Warming Trends, LLC v. Stone*, No. 19-cv-03027-PAB-STV, 2023 WL 2716652, at *10 (D. Colo. Mar. 30, 2023); *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (collecting cases). "The intent of the parties to a contract must be determined from the contract itself. If the terms of a contract are complete, clear, and unambiguous, no extraneous evidence may be considered in ascertaining the intent of the contracting parties." *Montemayor v. Jacor Commc'ns, Inc.*, 64 P.3d 916, 920 (Colo. App. 2002). To

determine whether a term is ambiguous, "the language of the instrument must be examined and construed in harmony with the plain and generally accepted meaning of the words employed." *Id.* "Written contracts that are complete and free from ambiguity will be found to express the intention of the parties and will be enforced according to their plain language." *Id.*

The Court begins by interpreting the contract between Mr. Cothey and the Etana Parties, consisting of the Offer Letter, RSA, and PIIA, as it is relevant to the issue of whether the Etana Parties failed to perform under the contract.[2] Specifically, the Court must determine whether the contract provision concerning Mr. Cothey's equity in Etana is ambiguous. Mr. Cothey states that the Offer Letter, RSA, and PIIA "should be read together, and together they suggest the parties contemplated equity would be granted subject to mere administrative formalities." Docket No. 59 at 10. Mr. Cothey cites Paragraph 3 of the Offer Letter, which states that Etana "will grant" Mr. Cothey Etana shares. *See id.* Mr. Cothey argues that the "mandatory language 'will grant' demonstrates a promise, not a mere conditional statement." *Id.* Mr. Cothey also argues that the "RSA confirms Mr. Cothey's status as a shareholder and owner of shares." *Id.*

Paragraph 3 of the Offer Letter states that "Etana Holdings, Inc. will grant you, *subject to the approval by the Board of Directors of Etana Holdings, Inc.*, 259,775 of 3,711,084 shares of Common Stock, $0.0001 par value, in accordance with the terms of the Restricted Stock Agreement." *Id.* at 4, ¶ 15 (emphasis added). Based on this

[2] The Court finds it proper to construe these agreements together. *See Bledsoe v. Hill*, 747 P.2d 10, 12 (Colo. App. 1987) ("If a simultaneously executed agreement between the same parties, relating to the same subject matter, is contained in more than one instrument, the documents must be construed together to determine intent as though the entire agreement were contained in a single document.").

language, the Court finds it unambiguous that Mr. Cothey's right to equity in Etana was contingent upon Board approval. Because this provision is unambiguous, the Court cannot consider extraneous evidence such as the parties' course of conduct or the Etana Parties' statements to Mr. Cothey regarding his equity shares. *See Montemayor*, 64 P.3d at 920. Accordingly, there can be no breach of the contract based on the mere fact that the Etana Parties did not grant equity to Mr. Cothey.

Mr. Cothey also contends that the Board's failure to approve issuance of shares is not available as a defense to the Etana Parties. *See* Docket No. 59 at 13-15. Mr. Cothey argues "that failure of a condition precedent is not available as a defense to a party to a contract when satisfaction of the condition was solely within that party's control, and they failed to exercise reasonable efforts to satisfy the condition." *Id.* at 13 (emphasis omitted). Mr. Cothey claims that "[n]othing prevented the board from approving a formal resolution" awarding equity to him, *id.* at 14, meaning that Etana itself was the cause of failure of this term of the agreement.

The Colorado Court of Appeals in *Reid v. Pyle*, 51 P.3d 1064, 1067-68 (Colo. App. 2002), considered this theory in terms of an implied duty to exercise reasonable diligence to perform contractual obligations within a party's control:

> It is a fundamental principle that if a promisor is himself the cause of the failure of performance of a condition upon which his own liability depends, he cannot take advantage of that failure. *Navajo Freight Lines, Inc. v. Moore*, 170 Colo. 539, 463 P.2d 460 (1970) (citing 6 S. Williston, Law of Contracts § 677 (3d ed.1957)). Where, as here, the promisor's obligation is conditional on the occurrence of a contingency whose happening is solely within the promisor's control, the promisor has an implied obligation to exercise reasonable diligence to bring about that contingency. *See Navajo Freight Lines, Inc. v. Moore*, *supra* (payment of money contingent on promisor establishing fund from which money would be paid); *Sorenson v. Connelly*, 36 Colo. App. 168, 536 P.2d 328 (1975) (purchase of home contingent on promisor securing financing); *see also Atha v. Atha*, 224 Ga. App. 280, 480 S.E.2d 298 (1997) (payment of money contingent on promisor

securing financing).

*Reid*, 51 P.3d at 1067–68. The court in *Reid* noted that, in order to rely upon this theory, the "burden is upon the promisee to prove by a preponderance of the evidence that the promisor did not exercise reasonable diligence in attempting to satisfy the obligation. If the promisor's lack of diligence is proved, payment may become due without performance of the condition." *Id.* at 1068 (citing *Navajo Freight Lines,* 463 P.2d at 462). Here, Mr. Cothey has shown undisputed facts that between January 2021, when he entered into his employment contract, and January 2023, when he was terminated, he reminded Etana on many occasions about its equity obligation to him and that Etana at no point mentioned any impediment to its fulfilling the promise. Therefore, under holdings of *Reid* and *Navajo Freight Lines*, the Court finds that the Etana Parties had an obligation to exercise reasonable diligence to obtain its Board's approval and failed to so do. The Etana Parties cannot rely on the lack of Board approval to avoid its obligation to pay Mr. Cothey equity and therefore failed to perform under the contract.[3]

Mr. Cothey and the Etana Parties had a contract pursuant to the Offer Letter, RSA, and PIIA, which were all executed on the same day. Docket No. 59 at 6, ¶¶ 19-21. Mr. Cothey performed his obligations under the contract through his work as a Principal Solutions Architect. *Id*. at 7, ¶ 24. As discussed above, the Etana Parties failed to perform under the contract by not awarding him equity. Finally, Mr. Cothey suffered damages as he did not receive the equity he was promised. *Id.*, ¶ 25.

---

[3] Similarly, the Etana Parties cannot rely on terms of the RSA, e.g., shareholder approval of equity issuance, as an unfulfilled contingency since such terms were also under their control.

Accordingly, the Court will grant summary judgment for Mr. Cothey on his breach of contract counterclaim against the Etana Parties.

It is unclear from the motion for summary judgment what relief Mr. Cothey seeks, particularly in light of the Etana Parties' failure to obtain counsel, their claims being dismissed, and the recommendation that default be entered. Therefore, the Court will order Mr. Cothey, within 30 days of issuance of this order, to file a supplemental brief regarding the relief he seeks from the Court now that the Court has entered summary judgment on his breach of contract claim.

## IV. CONCLUSION

Therefore, it is

**ORDERED** that Plaintiffs' and Third-Party Defendants' Motion for Summary Judgment Seeking Dismissal of Defendant's Remaining Counterclaim [Docket No. 53] is **DENIED**. It is further

**ORDERED** that Defendant/Third Party Plaintiff's Motion for Summary Judgment [Docket No. 59] is **GRANTED**. It is further

**ORDERED** that the Recommendation of the United States Magistrate Judge [Docket No. 61] is **ACCEPTED in part**. It is further

**ORDERED** that Mr. Cothey shall file a supplemental brief regarding the relief he seeks from the Court within **30 days** of issuance of this order.

DATED September 16, 2026.

BY THE COURT:

PHILIP A. BRIMMER
United States District Judge